# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

---

JACINTO CEDENO,

Petitioner,

-vs-

DALE ARTUS,

Respondent.

DECISION AND ORDER

16-CV-6167-CJS

---

## APPEARANCES

For Petitioner:

Jacinto Cedeno *pro se*
05-B-1232
Shawangunk Correctional Facility
Box 700
Wallkill, NY 12589

For Respondent:

Alyson Gill, A.A.G.
Arlene Roces, A.A.G.
Laura Stockmyer, A.A.G.
Email: Alyson.Gill@ag.ny.gov

Paul B. Lyons, A.A.G.
Office of New York State Attorney General
28 Liberty Street
New York, NY 10005
212-416-8229

## INTRODUCTION

**Siragusa, J.** Jacinto Cedeno ("Petitioner") brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. Petitioner alleges the state court that resentenced him under the New York Drug Law Reform Act violated his rights under the Eighth Amendment and the Equal Protection clause of the Constitution. For the reasons set forth below, the Court denies the petition.

PROCEDURAL HISTORY

In March 1995, a Monroe County grand jury indicted Petitioner, a/k/a "The General,"
and co-defendant Elvin Mercado, a/k/a "Flacko." The indictment charged them with commit-
ting the following crimes, relating to cocaine sales, on September 27 and October 5, 1994:
two counts of criminal sale of a controlled substance in the first degree, in violation of N.Y.
Penal Law § 220.43(1); two counts of criminal possession of a controlled substance in the
first degree, in violation of N.Y. Penal Law § 220.21(1); and two counts of criminal possession
of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1). State
Court Record ("S.R.") 72–74, 176, (Monroe County Indictment No. 0188/1995 (Mar. 23,
1995), Jun. 29, 2016, ECF No. 7-1.

Subsequently, a Monroe County grand jury indicted Petitioner and his wife, Dorinda
Cedeno, and charged them with committing the following crimes in connection with a cocaine
sale on November 18, 1994: criminal sale of a controlled substance in the first degree, in
violation of N.Y. Penal Law § 220.43(1); criminal possession of a controlled substance in the
second degree, in violation of N.Y. Penal Law § 220.18(1); and criminal possession of a con-
trolled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1). S.R. 176,
219–22 (Monroe County Indictment No. 1995/311 (May 5, 1995). Prior to Petitioner's trial,
the state court consolidated the two indictments, which covered three separate cocaine sales
and nine counts in total. S.R. 208–09, 307.

Petitioner claimed that "[a]t some point, the people had offered [him] a guilty plea to
an A-II felony with a sentence of 12 years to life to satisfy both indictments...." S.R. 177, 187
(Brief for Appellant in *People v. Cedeno*, No. KA 09-741 (May 2014); Trial Transcript ("Trial
TR.") 25–26 (Dec. 4–8, 1995), ECF No. 7-6. Petitioner rejected that plea deal. Prior to Peti-
tioner's trial, Elvin Mercado, Petitioner's co-defendant in the first indictment, pled guilty to

second-degree criminal sale of a controlled substance, a Class A-II felony, and was sentenced to six years to life. S.R. 177, 187, 206. Dorinda Cedeno, Petitioner's wife and co-defendant, had pending charges at the time of Petitioner's trial, but her case was ultimately sealed. S.R. 177.

In December 1995, Petitioner was tried by a jury in absentia before New York Supreme Court Justice Harold Galloway, and the jury, S.R. 6, and convicted him on all nine counts from both indictments. S.R. 174, 178; Trial Tr. at 744–47. On January 30, 1996, Justice Galloway sentenced Petitioner in absentia to: three indeterminate terms of 25 years to life imprisonment on the five Class A-I felony counts (three counts of first-degree criminal sale of a controlled substance and two counts of first-degree criminal possession of a controlled substance); an indeterminate term of 8 ⅓ years to life imprisonment on the Class A-II felony count (for second-degree criminal possession of a controlled substance); and three indeterminate terms of 8 ⅓ to 25 years on the three Class B felony counts (for third-degree criminal possession of a controlled substance). S.R. 10, 12–15, 95, 180, 240. The sentences covering the September 27, 1994, transactions (counts one, two, and three of Indictment No. 188-95) ran concurrently with each other. S.R. 12. Likewise, the sentences covering the October 5, 1994, transactions (counts four, five, and six of Indictment No. 188-95) also ran concurrently with each other, but consecutively to the sentences for the September 27, 1994, counts. Justice Galloway's sentences on the indictment for one transaction on November 18, 1994, ran concurrently with each other, but consecutively to the sentences for the transactions in September and October described above. Consequently, because Petitioner was convicted of first-degree criminal sale of a controlled substance in connection with three separate transactions, and each such conviction carried a consecutive sentence of 25 years to life imprisonment,

Petitioner received an aggregate indeterminate sentence of imprisonment of 75 years to life. S.R. 12–14, 180, 308.

On February 1, 1996, a notice of appeal was filed on behalf of Petitioner, who had still evaded capture. His appeal was dismissed two years later because of Petitioner's failure to perfect. S.R. 96, 181, 199, 201, 241.

In April 2005, nearly ten years after trial, Petitioner was apprehended and began serving his sentence. S.R. 181, 308. He moved *pro se* to extend his time to take a direct appeal, and the Appellate Division, Fourth Department, denied the motion. S.R. 16, 181, 203–04, 308. He applied to the New York Court of Appeals for leave to appeal that order, S.R. 17–18, and that court denied his application on September 29, 2005. S.R. 19.

In 2006, Petitioner filed a *pro se* federal habeas corpus petition in this Court, claiming that the state courts had denied him the right to appeal his convictions. *See Cedeno v. Conway*, 724 F. Supp. 2d 373, 375 (W.D.N.Y. 2010). On July 21, 2010, the Court dismissed his petition as untimely. *Id*. at 378–82 (Hon. Victor E. Bianchini, U.S. Magistrate Judge, adjudicated by consent). Petitioner did not appeal that decision.

On February 25, 2008, now represented by counsel, Petitioner filed in New York Supreme Court a motion and on January 20, 2009, a supplemental motion, pursuant to the Drug Law Reform Act of 2004 and 2005 ("DLRA"), L. 2004 ch 738 and L. 2005 ch 643 § 1, seeking to reduce the sentences on his Class A-I and A-II felony convictions. S.R. 78–92, 223–37.[1]

---

[1] "In 2004, the New York State legislature enacted sentencing reforms that, in part, reduced the maximum terms of imprisonment applicable to non-violent drug-related offenses. *See generally* N.Y. State Assembly Mem. in Supp. of Legislation, *reprinted in* Bill Jacket, 2004 A.B. 11895, ch. 738...." *Rivera v. United States*, 716 F.3d 685, 687 (2d Cir. 2013).

Under the DLRA, the new sentencing range for each of Petitioner's five A-I felonies was a determinate term of 8 to 20 years, and the new range for each of his A-II felony was a determinate term of 3 to 10 years. S.R. 181, 194–95 (citing N.Y. Penal Law §§ 70.70, 70.71).[2] Petitioner requested that the court: (1) direct that all the sentences run concurrently; and (2) impose the minimum sentence on each count. S.R. 88–92, 181, 233–37. The People filed opposition papers arguing that the court should impose the maximum sentences, to run consecutively as before. S.R. 93–94, 238–39.

Justice Galloway held sentencing hearings on January 5 and February 9, 2009. S.R. 21–64. On February 9, he imposed a determinate term of 15 years imprisonment along with 5 years of post-release supervision for each of the five A-I felonies (5 years less than the 20-year maximum), to run consecutively to each other and a determinate term of 10 years imprisonment and 5 years of post-release supervision for the A-II felony to run concurrently to his sentence on the A-I felonies. This lowered Petitioner's aggregate sentence from 75 years to life to an aggregate determinate term of 45 years imprisonment and 5 years post-release supervision, which was 15 years less than Petitioner's potential maximum under the DLRA of 60 years imprisonment. S.R. 60–62, 71, 181, 218, 308–09, 312.

Through counsel, Petitioner filed two companion but unconsolidated[3] appeals in the Appellate Division, Fourth Department, challenging his resentencing as "unduly harsh and

---

[2] The statute did not authorize resentencing on Petitioner's three remaining Class B felonies.

[3] One appeal addressed Indictment No. 95-188A, S.R. 65, and the other Indictment No. 95-311B, S.R. 293. "Absent an order of the court, appeals from orders or judgments in separate actions or proceedings cannot be consolidated but may, upon written request of a party, be scheduled by the court to be heard together on the same day." NY R A DIV PRAC § 1250.9 (McKinney).

severe," and requested that the Appellate Division reduce his sentence to 24 years, the minimum sentence available under the DLRA, in the "interest of justice." S.R. 65–210 (appendix and Petitioner's brief in Case No. 0188/1995); S.R. 211–301 (appendix and Petitioner's brief in Case No. 0311/1995); S.R. 192. Petitioner acknowledged that he could "not appeal from the judgment, but only from the resentence," and that the Appellate Division "lack[ed] statutory authority" to modify Petitioner's original sentences. S.R. 191.

On January 2, 2015, the Appellate Division summarily and unanimously affirmed the sentences Justice Galloway imposed at the resentencing on February 9, 2009. S.R. 328–31. Petitioner applied for leave to appeal to the New York Court of Appeals, S.R. 332–33, which the People opposed S.R. 334. The Court of Appeals denied leave on April 23, 2015. S.R. 335–36. *People v. Cedeno*, 124 A.D.3d 1376 (N.Y. App. Div. 4th Dep't 2015), *lv. denied*, 25 N.Y.3d 988 (2015) (appeal from new sentence rendered on February 9, 2009), and *lv. denied sub nom. People v. Cedeno, a/k/a The General*, 25 N.Y.3d 993 (2015) (same, but using his alias); *People v. Cedeno*, 124 A.D.3d 1382 (N.Y. App. Div. 4th Dep't 2015), *lv. denied*, 25 N.Y.3d 988 (2015) (Appeal No. 1), and *lv. denied sub nom People v Cadeno*, 25 N.Y.3d 988 (2015) (Appeal No. 2).

SCOPE OF REVIEW

The petition raises only an equal protection claim, but in his traverse, Petitioner also raises an Eighth Amendment claim. He argues that the state court denied him equal protection because during his resentencing under the reformed drug laws, he received a sentence more severe than the sentences originally imposed on his two co-defendants.

Petitioner has not exhausted either of his claims. However, he can still exhaust his claims by way of a motion under N.Y. Crim. Proc. Law § 440.20 to set aside his sentence as illegal. *See, e.g., Smith v. West*, 640 F. Supp. 2d 222, 241 (W.D.N.Y. 2009) ("Petitioner failed

to exhaust this claim in the state courts, but could still satisfy the exhaustion requirement because New York courts have entertained equal protection claims in the context of a motion to set aside the sentence as illegal under C.P.L. § 440.20, which may be filed at any time."); *see also McClelland v. Kirkpatrick*, 778 F. Supp. 2d 316, 337–38 (finding Eighth Amendment claim unexhausted where only state-law excessive sentence claim was raised on direct appeal, whereas an Eighth Amendment claim could still be raised in a N.Y. Crim. Proc. Law § 440.20 motion); *People v. Collier*, 79 A.D.3d 1162, 1163 (N.Y. App. Div. 3d Dep't 2010) ("a motion to set aside a sentence pursuant to CPL 440.20 is not barred by the failure to raise the issue of illegality on the direct appeal"), *aff'd*, 22 N.Y.3d 429 (2013); *but see Lopez v. Graham*, No. 10-CV-0468, 2012 WL 1865502, at 17 n.17 (E.D.N.Y. May 22, 2012) ("it is unclear whether, under § 440.20(2), Lopez would be precluded from filing a motion to set aside sentence on federal due process grounds because of the Appellate Division's determination that Lopez's sentencing did not violate New York law."), *aff'd on other grounds*, 519 F. App'x 52 (2d Cir. 2013).

Here, where Petitioner's claims are unexhausted, the Court has three options. First, the Court could stay the petition and allow Petitioner to return to state court to satisfy the exhaustion requirement. *See Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001). Petitioner, however, has not requested a stay. Moreover, in *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that a habeas petitioner is not entitled to a stay unless he demonstrates both that: (1) he had "good cause" for failing to exhaust his claims in state court before bringing his federal habeas petition; and (2) his unexhausted claims are "potentially meritorious." *Id*. at 277–78. As Petitioner has satisfied neither prong of *Rhines*, a stay would be an abuse of the Court's discretion.

Second, the Court could dismiss the petition without prejudice, allowing Petitioner to exhaust his claim in state court. *See Rhines*, 544 U.S. at 278; *see also Trimm v. Sheahan*, No. 9:14-CV-0905, 2014 WL 3670723, at *1–2 (N.D.N.Y. July 23, 2014) ("petitioner filed this federal habeas petition prematurely and it is therefore dismissed without prejudice to re-filing it in the appropriate district court once he has exhausted his state court remedies"); *Liao v. Evans*, No. 9:13-CV-0966, 2014 WL 3535727, at *5 (N.D.N.Y. July 16, 2014) ("federal courts should not be turned into a jurisdictional parking lot for unexhausted claims") (citations and internal quotation marks omitted).

Third, the Petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). *See Hayes v. Lee*, No. 11-CV-1365, 2015 WL 5943677, at *24 (S.D.N.Y. Oct. 13, 2015); *New York ex rel. Turner ex rel. Connors v. Dist. Attorney of New York City.*, No. 12-CV-3355, 2015 WL 4199135, at *9 (S.D.N.Y. July 10, 2015); *see also Rhines*, 544 U.S. at 277; *Abuzaid v. Mattox*, 726 F.3d 311, 321–22 & n.8 (2d Cir. 2013).

## DISCUSSION

As previously indicated, Petitioner's petition asserts a single claim: that "[t]he state court denied petitioner his Equal Protection of the Law rights by denying him to be resentence[d] in accordance with the new sentencing guideline between 8–20 years, citing that Petitioner was a drug kingpin for making two sales of cocaine of 200 grams, while granting relief to other defendants facing similar or worse circumstances...." Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶ 22, Mar. 16, 2016, ECF No. 1.[4] The Court construes this as an equal protection claim, which Petitioner could raise

---

[4] Petitioner raised an Eighth Amendment claim, which the Court will address later in this decision.

under N.Y. Crim. Proc. Law § 440.20 to set aside his sentence as illegal, *see, e.g., Smith v. West* F. Supp 2d at 241 (2009), to satisfy the exhaustion requirement, which he has failed to do. Notwithstanding Petitioner's failure to exhaust, because the Court concludes that Petitioner's claims are not meritorious, it will address the merits of the equal protection and Eighth Amendment claims as permitted by 28 U.S.C. § 2254(b)(2).

*Failure to Exhaust*

Petitioner's failure to exhaust his constitutional claims is evident from the record before the Court. Petitioner asserted only two bases for his equal protection claim in his appeals before the Fourth Department: (1) his revised sentence was "unduly harsh and severe" under state law; and (2) his original sentence was grossly unfair. Neither basis works to exhaust a Federal constitutional equal protection claim. A petitioner must give the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Thus, a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner has not done so.

Petitioner first argues that his revised sentence was "unduly harsh and severe." Regarding this argument, the Court notes that Petitioner failed to cite the Equal Protection Clause or otherwise note any Federal constitutional law in his appeal to the Appellate Division, and instead appealed solely on a state law "interest of justice" basis under N.Y. Crim. Proc. Law § 470.15. S.R. 192, 195–96. Appealing to the state appellate court's interest of justice powers does not put the state court on notice and give it an opportunity to pass upon and correct alleged violations of Petitioner's federal constitutional rights. *Redd v. Woughter*, No.

09 Civ. 9819, 2012 WL 2864514, at *5 (S.D.N.Y. July 12, 2012) ("a defendant's claim in state court of excessive punishment that does not clearly allege a federal constitutional violation is fairly read only to raise that state claim.").

Likewise, Petitioner's claims before the Fourth Department about his *original* sentence being "grossly unfair" did not raise the equal protection issue on appeal because the Fourth Department does not have the power to modify a defendant's *original* sentence. *See* CPL 450.30(3) ("For purposes of appeal, the judgment consists of the conviction and the original sentence only, and when a resentence occurs more than thirty days after the original sentence, a defendant who has not previously filed a notice of appeal from the judgment may not appeal from the judgment, but only from the resentence.").[5] This fact was known to Petitioner, as made evident in his resentencing appeal, where he stated that the Fourth Department "lack[ed] statutory authority to cure" any type of error in his original sentence. Therefore, Petitioner could "not appeal from the judgment, but only from the resentence." S.R. 191. Hence, because the law barred Petitioner in his resentencing appeal from attempting to challenge his original sentence, any such challenge could not have exhausted his instant equal protection claim. *See People v. Jordan*, 16 N.Y.3d 845, 846 (2011); *People v. Allen*, 103 A.D.3d 1214, 1215 (4th Dep't 2013) ("the initial sentence has been super[s]eded[,] any issue with respect to sentencing on th[at] appeal is now moot."); *Fields v. Lee*, No. 12 Civ. 4878, 2016 WL 889788, at *12 (S.D.N.Y. Jan. 28, 2016) ("The Second Department denied Plaintiff's claim on procedural grounds, stating that Petitioner's claim "that his underlying plea was invalid and should be vacated . . . may not be raised on this appeal from his resentence only."), report

---

[5] In this case, Petitioner's attorney filed an appeal from the original sentence, but Petitioner never perfected that appeal and the Fourth Department dismissed the appeal on motion by the prosecution. The Fourth Department also denied Petitioner's *pro se* motion to extend his time to take a direct appeal from the original judgment of conviction. S.R. 181, 308.

adopted, 2016 WL 879319 (S.D.N.Y. Mar. 7, 2016). Therefore, there is no possibility Petitioner can challenge his original sentence to an extent that would allow him to raise an equal protection claim before the Fourth Department.

Further, Petitioner made the argument in his 2014 appellate brief that his original sentence was disproportionate to the sentences of his co-defendants only to illustrate to the Fourth Department that his counsel's performance was deficient. He did not argue that his sentence was *actually* disproportionate with his co-defendants' sentences. S.R. 187 ("The lawyer could have argued that an aggregate 75-year-to-life sentence was grossly disproportionate to the treatment of the co-defendants."). However, an assertion that *counsel* failed to raise a claim does not exhaust the underlying claim. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) ("A court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims."). Thus, Petitioner's equal protection claim is unexhausted. "[F]ederal courts may only grant habeas relief absent full exhaustion in limited cases where there is 'an absence of available State corrective process,' or such process is 'ineffective' and cannot protect the petitioner's rights. 28 U.S.C. § 2254(b)(1)." *Rodriguez v. Uhler*, No. 15cv09297 (GBD) (DF), 2017 U.S. Dist. LEXIS 176170, at *25 (S.D.N.Y. Oct. 23, 2017). Petitioner's claim does not qualify for this exception.

### Petitioner's Sentence

Turning to his claim that the amended sentence amounted to cruel and unusual punishment, Petitioner does not cite the Eighth Amendment. Instead, he argues that his sentence of 45 years with 5 years of supervised post-release is cruel and unusual punishment under Art. I, Sec. 6, of the *New York* Constitution. He argues that this New York constitutional section

prohibits punishing a person disproportionately to the crime committed, citing *People v. Broadie*, 37 N.Y. 2d 100, 111, 371 N.Y.S. 2d 471 (1975), in support of his argument. Pet'r.'s Traverse ¶ 15, Sept. 8, 2016, ECF No. 10. Assuming Petitioner is attempting to raise a state constitutional claim, the Court does not have jurisdiction to entertain it. 28 U.S.C. § 2254(a).

However, if Petitioner is citing the New York Constitution simply as a means of advancing a federal equal protection or Eighth Amendment argument, the Court is unpersuaded. Petitioner's sentence fits within the range of sentencing under the amended DLRA laws. N.Y. Penal Law §§ 70.70, 70.71. In addition, Petitioner's sentence is not the maximum sentence that he could have received based on the new laws. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

### Co-defendant Elvin Mercado's Sentence

Petitioner argues that his sentence is not proportional to Elvin Mercado ("Mercado"), his co-defendant in the first indictment. This claim does not amount to an equal protection violation as the disparity between the two individuals' situations is proportional and justified.

Petitioner contends that his "lawyer could have argued that an aggregate 75-year-to-life sentence was grossly disproportionate to the treatment of the co-defendants. Elvin Mercado, a co-defendant for the September and October sales, received 6 years to life." S.R. 187. Mercado's sentence of six years to life was part of a plea deal that Mercado accepted. The People offered Petitioner a similar deal for twelve years to life. S.R. 177, 187. The six-year difference in the plea offers reflects Petitioner's participation in three transactions, as described in the second indictment, whereas Mercado was only alleged to have participated in two transactions, as described in the first indictment. Petitioner acknowledged this disparity between the two plea deals himself by noting that his "participation in three sales (rather than

two) warranted greater punishment tha[n] Elvin Mercado . . . ." S.R. 187. "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois*, 399 U.S. 235, 243 (1970). "Absent extraordinary circumstances, a defendant has no constitutional or otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her co-defendants." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995). Therefore, the disparity in the two sentences offered in the plea bargaining does not raise a federal constitutional issue.

*Co-defendant Dorinda Cedeno*

Additionally, Petitioner claims that his sentence was more severe than his wife's, Dorinda Cedeno, and that this disparity violates his equal protection rights. Petitioner's claim that his wife "apparently never received any sentence" does not show that she was convicted of any crime such that she would have been eligible to be sentenced. Petitioner acknowledged on direct appeal that his wife's case was sealed. S.R. 177. New York law requires the sealing of criminal cases if the action is terminated "in favor of" the accused. N.Y. Crim. Proc. Law § 160.50. The logical conclusion from Petitioner's argument is that Dorinda Cedeno's case was terminated in her favor.[6] Therefore, she and Petitioner are not in comparable situations.

---

[6] Even though the record does not reveal whether Petitioner's wife was found not guilty, or her charges were dismissed, it is still Petitioner's burden to establish the grounds for *habeas* relief by a preponderance. *See Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013). Therefore, an absence of evidence supports denial of his claim. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts may not "grant [ ] habeas relief on the basis of little more than speculation with slight support").

*Plea Deal*

Petitioner's remaining claim is that his 45-year determinate sentence is greater than the plea deal the prosecution offered him involving a sentence of 12 years to life. It is well settled, though, that a disparity between a pretrial plea offer and a defendant's post-trial sentence does not provide the grounds to raise a constitutional claim. *See, e.g.*, *Alabama v. Smith*, 490 U.S. 794, 795 (1989) ("We hold that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial."); *Daniels v. People of State of New York*, No. 07-CV-00448, 2009 WL 2602267 at *18, 2009 U.S. Dist. LEXIS 74889 at *52 (E.D.N.Y. Aug, 21, 2009) ("the disparity between Petitioner's pretrial offer and his eventual sentence does not raise a constitutional issue.") (citing *Alabama v. Smith*, *supra*.). Petitioner's argument that the different plea offers violated his equal protection rights is meritless.

*Petitioner's Traverse*

In his traverse, filed on September 12, 2016, ECF No. 11, Petitioner raises the Eighth Amendment, the Magna Carta, English case law, and the English Bill of Rights in support of his argument that his sentence is not proportionate to the crimes of which he was convicted. As mentioned above, the same exhaustion problems exist with regard to any Eighth Amendment claim in this petition. *See McClelland v. Kirkpatrick*, 778 F. Supp. 2d 316, 337 (W.D.N.Y. 2011) (appealing to the Appellate Division's power to reduce a sentence under its interest of justice jurisdiction does not alert the court to an Eighth Amendment cruel and unusual punishment claim). Additionally, Petitioner cites several cases in which other defendants, convicted of different crimes, received sentences less severe than Petitioner. Traverse at ¶¶ 32–41. The Supreme Court recognized the problem of citing to other defendants' cases as proof

of an unconstitutional sentence in *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138 (1980). There, then-Justice Rehnquist wrote for the majority:

> Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.... Given the unique nature of the punishments considered in *Weems* and in the death penalty cases, one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.

*Rummel*, 445 U.S. at 273, 274. The *Weems* case to which this passage refers is one that Petitioner also cited in his Traverse. In *Weems v. United States*, 217 U.S. 349 (1910), the Supreme Court granted certiorari to review a Weems' conviction for falsifying a public record and his punishment of "fifteen years of Cadena...." *Id*. at 357–58. Justice Rehnquist summarized the issue in *Weems* as follows:

> Although the Court in *Weems* invalidated the sentence after weighing "the mischief and the remedy," 217 U.S., at 379, its finding of disproportionality cannot be wrenched from the extreme facts of that case. As for the "mischief," Weems was convicted of falsifying a public document, a crime apparently complete upon the knowing entry of a single item of false information in a public record, "though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it." *Id*., at 365. The mandatory "remedy" for this offense was *cadena temporal*, a punishment described graphically by the Court:
>
>> "Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicile without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing." *Id*., at 366.

*Rummel*, 445 U.S. at 273. The opinion concluded:

> Thus, we do not believe that *Weems* can be applied without regard to its pecu-
> liar facts: the triviality of the charged offense, the impressive length of the min-
> imum term of imprisonment, and the extraordinary nature of the "accessories"
> included within the punishment of *cadena temporal*.

*Id.* at 274. Petitioner uses different cases to argue that his sentence was disproportionate to the sentences handed down in, for example, murder cases. However, those cases do not serve as sufficient comparators. Each punishment is unique to the crime and the perpetrator, therefore, Petitioner's attempt to use others' sentences for different crimes to prove the disproportionality of his sentence lacks merit. In this regard, the Supreme Court affirmed the principles discussed in *Rummell* in its decision in *Hutto v. Davis*, 454 U.S. 370 (1982), in which the Court stated:

> [T]he excessiveness of one prison term as compared to another is invariably a
> subjective determination, there being no clear way to make "any constitutional
> distinction between one term of years and a shorter or longer term of years."
> *Ibid*. Thus, we concluded that "one could argue without fear of contradiction by
> any decision of this Court that for crimes concededly classified and classifiable
> as felonies, . . . the length of the sentence actually imposed is purely a matter
> of legislative prerogative." *Id*., at 274.

*Hutto v. Davis*, 454 U.S. 370, 373, 102 S. Ct. 703, 705 (1982) (quoting *Rummell v. Estell*, 445 U.S. 263 (1980)). In light of the case law cited, the Court rejects Petitioner's argument that his sentence should be compared to the sentences of several other defendants in other cases. "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois*, 399 U.S. 235, 243 (1970).

Petitioner also argues that his alias, "The General," was used at trial to unfairly portray him as a "drug kingpin." He contends this alias may have prejudiced the sentencing judge. S.R. 193. During Monroe County Sheriff's Deputy Thomas VanThof's testimony, he related how, working undercover, he obtained Petitioner's alias:

> At this point I took another seat again at the table, and at this time Elvin Mercado was seated at the head of the table with Bill O'Leary on one side and myself on the other. At this time then Elvin Mercado started to explain to me how I should contact The General next time I wanted more cocaine, that he was going to give me The General's pager number. He then wrote down on a white piece of paper The General, misspelling it, J-e-n-r-a-l, and wrote down the number 783-7112. He then spoke partially in Spanish, asking The General for the code to assign us, which The General responded to, zero zero in Spanish, which is basically the same translation in English. He then asked, directing it to Bill O'Leary and myself, what code we wanted to use and I asked if we could use that same code, zero zero. He—Elvin looked up at The General, asked him if that was okay. He said sure.

Transcript, Continuation of Jury Trial, Dec. 6, 1995 at 385:9–22 (attached to Respondent's Answer). The prosecutor noted in a colloquy with the trial judge that "It's the defendant that used that nickname, The General. Called himself The General. He had—he had his partner announce him as The General. He's known throughout the tapes . . . as The General." Transcript of Motions and Jury Trial, Dec. 4–8, 1995, at 20:12–17 (attached to Respondent's Answer). The "tapes" reference pertains to audio and video recordings introduced at trial.

The sentencing judge for both the original sentencing and resentencing proceedings was also the trial judge, and, accordingly, had the advantage of hearing all the evidence. Consequently, he had a basis for determining an appropriate sentence aside from having heard Petitioner's alias.

## CONCLUSION

For the foregoing reasons, the Court finds that although the grounds raised in the petition and traverse are unexhausted, the Court nevertheless finds that they are without merit. Pursuant to 28 U.S.C. § 2254(b)(2), the Court denies the petition. The Clerk will close this case.

The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253, because it finds that Petitioner has not made a substantial showing of the denial of a constitutional right.

Further, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order and Judgement would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Petitioner should direct any additional requests to proceed on appeal as a poor person, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated: October 17, 2019
      Rochester, New York

                  ENTER:

                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge